UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

JANCARLOS GONZALEZ-RIVERA,

Defendant.

REPORT & RECOMMENDATION

20-CR-6101-01-EAW-MJP

**Pedersen, M.J.** On August 30, 2021, the Court held oral argument for Defendant's Omnibus Motion.[1] (ECF Nos. 260, 261, 262, 281.) The Court reserved on the issues of suppression of tangible evidence and statements. For the reasons stated below, the undersigned recommends that the District Court deny the motion for suppression of physical evidence and statements. The undersigned will discuss Defendant's Motion to Suppress Evidence from 75 Angelus Drive, ECF No. 260, and Defendant's Motion to Suppress Evidence and Statements from Interrogation, ECF No. 262, below. Defendant's Motion to Suppress Evidence gathered from Field Interview Forms (ECF No. 261) will be argued before the Court on February 7, 2022. Defendant's Omnibus Motion (ECF No. 281) has already been decided by the Court. (Order, ECF No 580.)

*Suppression of Evidence Recovered from 75 Angelus Drive*

Defendant moves to suppress the search of his residence. (Mot. to Suppress at 1, ECF No. 260.) The evidence recovered as a result of the search and seizure at 75 Angelus Drive, Rochester, New York, on April 30, 2020, includes: (a) a black 2020 Audi Suburban bearing NY plate JRE-4781 recovered from the driveway; (b) U.S. currency (DEA Exhibit N-86)

---

[1] Defendant filed his omnibus motion in separate documents.

recovered from a sweatshirt in the master bedroom; (c) a cell phone (DEA Exhibit N-253) recovered from the dresser in the master bedroom; (d) the contents forensically recovered or extracted from the aforementioned cell phone, including, but not limited to, electronic communications, contact lists, photographs, and financial data and information; (e) a Key with the numbers 24313, recovered from a wallet in the master bedroom; (f) jewelry recovered from a night stand in the master bedroom; (g) jewelry recovered from the dresser in the master bedroom; (h) one digital scale in a box recovered from the closet next to the front door; (i) a kilogram press and several items allegedly used to mix narcotics recovered from a suitcase in the closet next to the front door; (j) any and all photographs and video-recordings of the aforementioned evidence; (k) any forensic, trace, or laboratory evidence derived or developed from the above-listed items, including DNA and or fingerprints; and (l) any and all testimony from law enforcement personnel concerning the search of the residence and the aforementioned items recovered from the residence, including testimony concerning a drug K-9 used to detect the presence of narcotics inside the residence. (*Id.*, 1–2)

Probable cause to search a place exists if the issuing judge "make[s] a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The standard is one of "probability, and not a prima facie showing of criminal activity . . ." *United States v.*

*Travisano*, 724 F.2d 341, 346 (2d Cir. 1983). Probable cause "need not be based on direct, first-hand, or hard evidence." *United States v. Thomas*, 757 F.2d 1359, 1367 (2d Cir. 1985).

Once a search warrant has been issued, a reviewing court must accord substantial deference to the issuing judicial officer's prior finding of probable cause. The affidavit that supported the application "must be tested and interpreted by . . . courts in a common sense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108 (1965). The Second Circuit has summarized the principles that should guide a court in reviewing the probable cause determination of the judicial officer who issued the warrant:

> [The reviewing court's] after-the-fact examination of the papers is not to be *de novo* review. It should start with the proposition that the Magistrate's finding of probable cause is entitled to substantial deference. In fact, a search based upon a magistrate's determination will be upheld by a reviewing court on less persuasive evidence than would have justified a police officer acting on his own. Further, the magistrate's finding of probable cause is itself a substantial factor tending to uphold the validity of this warrant. This is particularly true in close cases where doubts should be resolved in favor of upholding the warrant.

*United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983); *United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993).

The Smith Affidavit established sufficient probable cause to believe that 75 Angelus Drive contained evidence of drug dealing and other criminal activity, that the investigation of Jancarlos Gonzalez-Rivera and his codefendants was a long, multi-agency investigation. (Smith Aff., ¶ 7, ECF No 1.)[2] The Smith affidavit also established that Gonzalez-Rivera was the head of a long-term drug trafficking conspiracy which distributed large quantities of drugs in the Rochester area. (Smith Aff., ¶¶ 7, 27, 36.) The Smith Affidavit includes

---

[2] Special Agent Sabatino Smith's affidavit is filed along with the complaint.

numerous descriptions of meetings and transactions involving Gonzalez-Rivera in suspected drug transactions. (Smith Aff., ¶¶ 26, 46–78, 125–236, 240–66, 270–93, 301–05, ECF No 1.)

The Smith Affidavit also established that 75 Angelus Drive was Gonzalez-Rivera's principal residence. (Smith Aff., ¶¶ 9, 304, 390–91, ECF No 1,) Finally, Agent Smith opined that, based on his training and experience and his involvement in this investigation, Gonzalez-Rivera and other drug dealers like him commonly maintain at their residences and automobiles: controlled substances, paraphernalia for processing and packaging controlled substances, firearms, notes and records of their drug trafficking, including ledgers, shipping records, phone numbers of suppliers and customers, photographs and videos of themselves and associates, cellular telephones and other digital devices, cash, bank records, assets and other illicit proceeds. (Smith Aff. ¶ 377.)

### *Large Scale Drug Trafficking Organization*

In *United States v. Williams* the court pointed out that:

> "[p]robable cause determinations are frequently upheld in situations where a law enforcement officer provides an expert opinion that drug traffickers often maintain evidence of their crimes at their residences." *United States v. Fernandes*, 50 F.Supp.3d 398, 405 (W.D.N.Y. 2014). An investigator's opinion that based on training and experience, drug traffickers maintain evidence of their illegal activities at their residences, may assist in establishing probable cause to search. Generally, an investigator's opinion in this regard is based on background evidence of significant, on-going drug trafficking activity. See *United States v. Jackson*, 493 F. Supp. 2d 592, 609-10 (W.D.N.Y. 2006) (citing the Second Circuit's holding in *Fama* and upholding search warrant in multi-agency, large-scale cocaine investigation where DEA agent admitted that he had "no specific information" connecting drugs to premises to be searched, but opined, based on his training and experience, that "dealers involved in narcotics trafficking, such as those who deal in quantities of cocaine and cocaine base, frequently maintain at their residences or other residences, cocaine and currency to finance their business, as well as records and other papers relative to the transportation, ordering, sale and distribution of controlled substances"); *see also United States v. Mullen*, 451 F. Supp. 2d 509, 543 (W.D.N.Y. 2006) ("[The] judicial officer thus properly inferred, relying on

4

[the affiant's] experience as stated in the affidavit, that based on [the defendant's] status as a leader of the large-scale and on-going narcotics conspiracy, as charged by the Indictment, [the defendant's] residence would yield evidence of narcotics trafficking.").

*United States v. Williams*, 350 F.Supp.3d at 268–69. Significantly, contrary to Gonzalez-Rivera's situation, in *Williams* Judge Wolford noted that "there [was] no indication that Defendant was part of a large-scale drug trafficking organization [and that] the search warrant application does not contain a description of a lengthy investigation involving several agencies" (*Id.*, at 269.)

In contrast, Agent Smith's affidavit does identify a "large-scale drug trafficking organization" and does describe "a lengthy investigation involving several agencies." (Smith Aff., ¶ 7, ECF No 1.) The Smith Affidavit also establishes that Gonzalez-Rivera was not only a member of the organization, but indeed the head of the organization. (*Id.*, ¶ 7.) Additionally, the Smith Affidavit emphasized the likelihood that the 75 Angelus and the other targeted premises will contain evidence of drug trafficking. (Smith Aff., ¶ 377, ECF No 1.) Agent Smith also states that these premises are likely to contain the cell phones of the defendants (including Gonzalez-Rivera), which will, themselves, contain a reservoir of relevant evidence. As Agent Smith notes:

> Traffickers of controlled substances commonly maintain cellular telephones and other communication devices on their person, in their residences, in their vehicles, and in their businesses, that are utilized to further their firearm and drug trafficking activities, including contacting other individuals with whom they traffic drugs; certain electronic devices, including i-Phones, Blackberries, i-Pods, and Android phones, store information such as email messages, chats, multimedia messages, installed applications or other electronic communications, calendars, notes, passwords, dictionary entries, Global Positioning Satellite ("GPS") entries, internet protocol connections, and location entries, including cell tower and WiFi entries internet or browser entries or history. In addition, these devices often contain proprietary software, in the form of system, data, or configuration information, which enable the

> types of information and data described above to be accessed and analyzed. These items remained stored on the electronic devices even if the device in question has lost all battery power, and has not been used for an extended period of time. In this case, cell phones and smart phones are particularly important and likely to contain valuable evidence of drug trafficking and other criminal activity by the defendants and other coconspirators. The investigation has revealed that the great majority of communications between and among the defendants was via end-to-end encrypted media such as FaceTime. Messages sent via this medium are likely to be maintained in the respective phones of the defendants, which phones are likely to be in the residences and other locations sought to be searched (people keep their cell phones with them).

(Smith Aff., ¶ 377(g), ECF No 1). Placed in the position of having to review its own findings, the undersigned accords substantial deference to the initial findings. The foregoing sworn averments by Agent Smith established sufficient probable cause to support the search of 75 Angelus as it demonstrates a long-standing drug tariffing organization headed by Gonzalez-Rivera.

*Good Faith and the Validity of the Search Warrant*

The exclusionary rule does not apply to evidence seized by police who have acted in reasonable reliance on a search warrant that was issued by a neutral magistrate, even if the magistrate judge's probable cause determination is incorrect. *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984). This exception applies so long as the magistrate has not abandoned his neutral role, the officer has not been dishonest or reckless in preparing the affidavit, and there are sufficient indicia of probable cause to permit a reasonable belief in its existence. (*Id.*) Even if the search warrant was not supported by probable cause, the executing agents acted in good faith reliance on it, and no officer has been shown to have been dishonest or reckless, nor did the undersigned abandon his neutral role. Therefore, the warrant was proper, and evidence seized from the warrant should not be suppressed.

Defendant also argues that the good faith exception does not apply because "the search warrant affidavit and application were so lacking in indicia of probable cause as to render reliance upon it unreasonable." (Mot. to Supp., at 13, ECF No 260.). This contention is unsupported. As set forth above, the warrant was sufficiently supported by probable cause and the agent's reliance on it was justified and reasonable.

*Motion to Suppress Post Arrest Statements*

Defendant has moved to suppress any post arrest statements he made; however, the government has indicated that it does not intend to use any such statements. (Mot. to Supp. Statements, ECF No 262; Mem. in Opp. ECF No. 368.) As there are no statements at issue, the Court cannot grant suppression. Should statements be later used as evidence the parties may refile their motions to suppress statements.

## CONCLUSION

For the reasons stated above, the Court recommends the district judge deny both Defendant's Motion to Suppress Evidence from 75 Angelus Drive, ECF No. 260, and Defendant's Motion to Suppress Evidence and Statements from Interrogation, ECF No. 262. Defendant's Motion to Suppress Evidence gathered from Field Interview Forms (ECF No. 261) will be argued before the Court on May 10, 2022. Defendant's Omnibus Motion (ECF No. 281) has already been decided by the Court. (Order, ECF No 580.)

SO ORDERED.

DATED:   February 16, 2022
         Rochester, New York

_____
MARK W. PEDERSEN
United States Magistrate Judge